**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **MIDLAND STATES BANK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:22-cv-190-DWD** |
| | ) | |
| **BAXTER SENIOR LIVING, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM & ORDER**

**DUGAN, District Judge:**

This case is a declaratory judgment action filed by Plaintiff Midland States Bank ("Midland") against Defendant Baxter Senior Living, LLC ("Baxter"). The parties dispute whether Baxter was required to pay a $603,000 exit fee to Midland under the terms of a construction loan contract between the parties. Midland filed this declaratory judgment action to resolve the question.  Now before the Court is Baxter's motion to dismiss or, in the alternative, stay proceedings or transfer venue. (Doc. 21). It appears that Baxter has filed a parallel action against Midland in the United States District Court for the District of Alaska seeking to recover the $603,000 exit fee ("the Alaska case"). Baxter seeks a dismissal, stay, or transfer of this case in favor of the Alaska case. Baxter's motion is due to be granted because prudential concerns articulated by the Seventh Circuit favor coercive actions over parallel declaratory judgment actions.

**I. FACTUAL BACKGROUND**

In August 2018, the parties entered into a construction loan contract. (Doc. 1-1 at 8). Midland agreed to loan Baxter over $20 million for the construction of Baxter's senior

living community in Anchorage, Alaska. (Doc. 1-1 at 8). Under the terms of the contract, Baxter was obligated to pay a $603,000 exit fee when it repaid the loan in full. (Doc. 1-1 at 8). The contract excused Baxter from paying the exit fee if Baxter refinanced the loan with Love Funding Corporation or if Love Funding Corporation was unable or unwilling to refinance the loan. (Doc. 1-1 at 26).

In May 2021, Baxter sold the senior living community to a third party, repaid the loan in full, and paid the exit fee. (Doc. 1-1 at 9). In its motion to dismiss, Baxter represents that it did not believe it was required to pay the exit fee under the terms of the contract and only did so under protest. (Doc. 21 at 3). In October 2021, Baxter sent Midland a letter informing Midland of its intention to file suit in the District of Alaska to recover the exit fee. (Doc. 21-2). Baxter attached a copy of the draft complaint it intended to file and told Midland that it would file the complaint before the end of the year if the parties could not resolve the dispute privately. (Doc. 21-2). Then, on December 9, 2021, Midland filed this case in Illinois state court seeking a declaratory judgment that it is entitled to retain the exit fee. (Doc. 1-1 at 9–10). Baxter first received service of the complaint and summons in this case on January 3, 2022. (Doc. 1-1 at 61–68). However, before receiving service in this case, Baxter filed its complaint in the District of Alaska on December 22, 2021. Complaint, *Baxter Senior Living, LLC v. Midland States Bancorp., Inc., et al.*, Doc. 1, No. 3:21-cv-273-SLG (D. Alaska). Baxter then removed this case to this Court on January 31, 2022. (Doc. 1).

## II. DISCUSSION

A federal court has the power to decline to hear a declaratory judgment action, even if the court has jurisdiction over the action. *Tempco Elec. Heater Corp. v. Omega Eng'g,*

2

*Inc.*, 819 F.2d 746, 747 (7th Cir. 1987). Further, "[f]ederal district courts have the inherent power to administer their dockets so as to conserve scarce judicial resources [and may defer] to another federal proceeding involving the same parties and issues to avoid duplicative litigation." *Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 629 (7th Cir. 1995). And when a declaratory judgment action parallels a "mirror-image action seeking coercive relief—we ordinarily give priority to the coercive action, regardless of which case was filed first." *Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 980 (7th Cir. 2010).

In *Trippe*, the plaintiff filed a complaint in the Northern District of Illinois seeking a declaratory judgment of non-infringement of a trademark against the defendant. *Trippe*, 46 F.3d at 625. Four months later, the defendant filed a complaint in the District of Rhode Island alleging trademark infringement against the plaintiff. The defendant filed a motion to dismiss the complaint in the Illinois court. The plaintiff filed a motion in the Rhode Island court to transfer the coercive action to the Illinois court. The Rhode Island court stayed proceedings until the Illinois court decided the pending motion to dismiss. The Illinois court dismissed the case, citing the need to discourage duplicative litigation. *Id.* at 626. The Seventh Circuit affirmed the dismissal, refusing to rigidly adhere to a "first-to-file" rule and observing that the plaintiff's arguments regarding Illinois being the preferrable venue would be heard when the Rhode Island court decided the motion to transfer venue. *Id.* at 629.

Like the parties in *Trippe*, Midland and Baxter have each filed actions against the other regarding the same facts and legal issues but in different federal district courts. This

3

situation presents a problem. The Seventh Circuit has repeatedly affirmed district court efforts to conserve judicial resources by avoiding duplicative litigation. *Id.*; *Rsch. Automation*, 626 F.3d at 975 ("To prevent duplication of this sort, district courts may transfer, enjoin, or dismiss one of the lawsuits."). This case and the Alaska case are mirror images of each other and adjudicating them in two separate federal courts simultaneously would be a waste of judicial resources.

To avoid this waste, the Court will dismiss this case. There are three specific reasons supporting this solution. The first reason is that dismissing the case is the surest way to avoid waste of judicial resources. As opposed to simply staying the case, dismissal resolves the problem finally and unambiguously. Dismissal also has the advantage of avoiding the duplication of efforts. Baxter's motion alternatively asks the Court to transfer venue in this case to Alaska. And Midland spends most of its response arguing against transfer and explaining why Illinois is the better venue for this litigation. (Doc. 26 at 8–14). Yet, Midland has also notified the Court that it has filed its own motion to transfer venue in the Alaska case. (Doc. 24). It would be a significant waste of judicial resources for both courts to engage in the same fact-intensive venue transfer analysis. Dismissal guarantees that only one court will have to perform that analysis, thus avoiding duplication of efforts.

The second reason supporting dismissal is the need to avoid the possibility of different outcomes in the two cases. Should both courts engage in a venue transfer analysis, is it possible they would come to different conclusions, both courts either retaining their respective cases or transferring them to each other. Both outcomes involve

the duplication of efforts and leave open the possibility that the merits of the cases might ultimately be decided differently.

The third reason in favor of dismissal is to discourage the misuse of declaratory judgment actions. The Seventh Circuit's preference for coercive actions over declaratory judgment actions and its rejection of the "first-to-file" rule are meant to prevent declaratory judgment actions from becoming a means of forum shopping. *Tempco*, 819 F.2d at 749–50 (rejecting "first-to-file" rule and holding that declaratory judgment actions should not be used to forum shop). "The Declaratory Judgment Act is not a tool with which potential litigants may secure a delay or choose the forum. Declaratory judgment actions brought in the face of clear threats of suit and seeking determinations that no liability exists will be closely scrutinized as potentially improper anticipatory filings if the other party proceeds to file." *Schwarz v. Nat'l Van Lines, Inc.*, 317 F. Supp. 2d 829, 833 (N.D. Ill. 2004) (internal citations omitted).

The timeline of the filings in these cases is concerning. As Baxter's letter shows, it had informed Midland of its intent to file suit in Alaska before the end of 2021 if the parties could not resolve their dispute privately. Indeed, Baxter did file suit on December 22. Yet, only a few days earlier in December, Midland filed this action in Illinois state court. Midland rejects the idea that it attempted an anticipatory filing. (Doc. 26 at 16). And Midland correctly argues that the purpose of the Declaratory Judgment Act is to prevent one party from using the threat of litigation against another party as an intimidation tactic "while deliberately avoiding a determination of the parties' rights." *Republic Techs. (NA), LLC v. BBK Tobacco & Foods, LLC*, 240 F. Supp. 3d 848, 852 (N.D. Ill.

5

2016). But here, there is no evidence that Baxter was avoiding litigation as a means of intimidating or coercing Midland. Rather, it appears that Baxter engaged in good faith negotiations, set a clear timeline should negotiations fail, and stuck to that timeline. If Midland truly believed Baxter's timeline was just a pretense, it had merely to wait another month to see if Baxter followed through on its ultimatum. In light of the Seventh Circuit's rejection of the "first-to-file" rule, its stated preference for coercive actions over declaratory judgment actions, and the suspect timing of Midland's filing, the Court gives no weight to the fact that Midland filed this case before Baxter filed the Alaska case.

### III.  CONCLUSION

Therefore, in the interests of judicial economy, Defendant Baxter's motion (Doc. 21) is **GRANTED**, and this case is **DISMISSED without prejudice**. The Clerk of Court shall enter judgment in Defendant's favor.

**SO ORDERED.**

Dated: June 1, 2022

_____
DAVID W. DUGAN
United States District Judge